# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-40934
Summary Calendar

ANTELMA DOMINGUEZ-PEREZ; MARIA GUADALUPE SALINAS-
GRIMALDO; PATRICIA BOONE-GOMEZ; ARMANDO BOONE-GOMEZ,
Individually and on behalf of all others similarly situated,

Petitioners–Appellants,

v.

MICHAEL CHERTOFF, SECRETARY, DEPARTMENT OF HOMELAND
SECURITY; EDUARDO AGUIRRE, Acting Director of the Bureau of
Citizenship and Immigration Services; ALFONSO DE LEON, Interim
District Director of Bureau of Citizenship and Immigration Services,
Harlingen, Texas; MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL
SECURITY,

Respondents–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:96-CV-116

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

In 1994, Plaintiff Antelma Dominguez-Perez filed her Application for
Certificate of Citizenship (N-600). Dominguez-Perez's husband, Jose Luis, filed
an Application to Register Permanent Residence or Adjust Status (I-485) and,
pursuant to 8 C.F.R. § 274a.12(c)(9), also filed an Application for Employment

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Authorization (I-765) resulting in the issuance of an employment authorization document (EAD). However, unlike for I-485 applicants, the then-existing regulations precluded issuance of EADs to N-600 applicants such as Dominguez-Perez. In July 1996, Dominguez-Perez and several other N-600 applicants seeking EADs (Petitioners) filed a petition under 28 U.S.C. § 2241 claiming, inter alia, Equal Protection violations.

The magistrate judge recommended certification of a class consisting of "all people who have filed or will file an N-600 application with the INS District Office in Harlingen, Texas, in whose cases there has been no final adjudication of their claim to United Sates [sic] citizenship." The magistrate judge further recommended granting the requested declaratory and injunctive relief—allowing the class to obtain EADs while their N-600s were pending. The district court adopted the magistrate judge's recommendations in its written order.

The parties subsequently entered into a settlement agreement and the district court issued its "Amended Final Order," requiring, in relevant part, that "applications for EADs based on pending applications for Certificates of Citizenship be adjudicated in the same manner and in the same time frame as applications for EADs filed by aliens who have applied for adjustment of status under Section 245 of the Act."

Subsequent to the injunction, the United States Citizenship and Immigration Services (CIS) instituted a "90-Day Program" for adjudication of all I-485 and N-600 applications. Key to this program is the use of a "stop-time" rule. The stop-time rule tolls the running of any time limit relating to I-485 and N-600 applications as well as derivative applications (such as I-765 applications for EADs) when a Request for Further Evidence form is issued. Believing this new program violated the court's injunction, Petitioners filed a motion seeking to enforce the Amended Final Order and to hold the CIS District Director of the

Harlingen District in contempt. Petitioners also sought a declaration that the applicable regulations did not authorize tolling with regard to I-765 applications for EADs.

Finding compliance with the previous injunctive order, the district court held that CIS could apply the tolling rule to N-600 applicants as long as it applied the same rule to I-485 applicants. However, the district court declined to address whether the regulations authorize tolling with regard to I-765 applications for EADs on the grounds that no actual case or controversy existed. Petitioners appeal only the district court's refusal to address whether the regulations authorize tolling with regard to I-765 applications for EADs.

The proper method to enforce an injunction is through the "power of contempt."[1] Like the imposition of costs, attorney's fees, and Rule 11 sanctions, the imposition of a contempt sanction is not a judgment on the merits of an action.[2] "Rather, it requires the determination of a collateral issue" and thus may be considered after an action is no longer pending.[3]

Petitioners appeal the district court's refusal to decide an issue not raised in their complaint or included in the Amended Final Order. Deciding such a question would result in an improper advisory opinion.[4]

AFFIRMED.

---

[1]Gunn v. Univ. Comm. to End the War in Viet Nam, 399 U.S. 383, 388 (1970); see also United States v. United Mine Workers of Am., 330 U.S. 258, 303-04 (1947) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.").

[2]Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).

[3]Id. at 395-96.

[4]See John Doe #1 v. Veneman, 380 F.3d 807, 819 (5th Cir. 2004) (noting that enjoining conduct not challenged in the complaint would constitute "an impermissible advisory opinion").